IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CLAY CHASTAIN, WILLIAM YOUNG, MARY EALON, DENETTA DICKERSON, LATOY MATHEWS, | ) ) ) ) |
| Plaintiffs, | ) Case No. 4:20-cv-00694-RK |
| v. | ) ) |
| CITY OF KANSAS CITY MISSOURI, | ) ) |
| Defendant. | ) |

# ORDER

Before the Court is Defendant's motion for summary judgment. (Doc. 46.)[1] The motion is fully briefed. (Docs. 47, 48, 50.) After careful consideration, and for the reasons explained below, Defendant's motion for summary judgment is **GRANTED**.

## I. Background

Local Rule 56.1(b)(1) requires that "[a] party opposing a motion for summary judgment must begin its opposing suggestions by admitting or controverting each separately numbered paragraph in the movant's statement of facts." The rule further provides that "[u]nless specifically controverted by the opposing party, all facts set forth in the statement of the movant are deemed admitted for purposes of summary judgment." Local Rule 56.1(b)(1). In opposing Defendant's motion for summary judgment, Plaintiffs did not address the statement of facts in Defendant's motion. Therefore, the facts set forth in Defendant's Statement of Uncontroverted Facts (Doc. 47 at 1-4) are deemed admitted for purposes of summary judgment.

Plaintiffs are five individuals appearing in this matter pro se both individually and as a committee of petitioners. (*See* Doc. 12 at 1 ("Come now Plaintiff's, the Committee of Petitioners (Pro Se) and (hereinafter "Plaintiffs, who are all electors of the City and represent the 3,000 voters who signed petition) [*sic*]").) Plaintiffs assert this suit under 42 U.S.C. § 1983 against Defendant,

---

[1] On December 6, 2021, after Plaintiffs' suggestions in opposition to Defendant's summary judgment motion had been filed, one of the Plaintiffs, William Young, filed a pro se motion to "add my signature to Plaintiff's [Response] to Defendant's Summary Judgment." (Doc. 49.) Mr. Young states he was "in the hospital for several months and was unable to sign" the response before it was submitted. (*Id.*) Defendant did not respond to Mr. Young's motion. Under these circumstances, the motion is **GRANTED**.

City of Kansas City, Missouri ("the City"), regarding Plaintiffs' attempt to enact a city ordinance through the City's initiative petition process. Plaintiffs seek injunctive and monetary relief for Defendant's alleged violation of their First Amendment right to petition the government since the City has failed to place the petition on the ballot for a vote.

Sections 701 through 704 of Kansas City's city charter[2] provides an initiative process for new ordinances to be submitted to the City Council by petition. The city charter contemplates a committee of petitioners, as Plaintiffs are here, consisting of "five electors of the city" who "shall be officially regarded as filing the petition." City Charter, § 731. Section 701 of the city charter requires a petition for a "new ordinance or any ordinance to amend or repeal . . . any existing ordinance" to be signed by "electors of the City" equal to five percent of the total vote cast for Mayor in the last preceding regular municipal election. Once assembled, the committee of petitioners must then file the petition with the City Clerk, who must within ten days examine and certify the sufficiency of the petition. City Charter, § 731. If certified by the City Clerk as sufficient, the City Clerk "shall certify and submit the ordinance . . . to the [City] Council at its next meeting." City Charter, § 702. Section 702 provides what happens next:

> If the [City] Council fails to pass such ordinance within sixty days after such submission, or passes it in a form different from that set forth in the petition, the committee of petitioners . . . may require that it be submitted to a vote of the electors in its original form. If the committee of petitioners requires the submission of the proposed ordinance to the electors, they shall so certify to the City Clerk within ten days after the final action by the Council or expiration of the sixty-day period.

Finally, § 703 provides:

> Upon receipt of such certification the City Clerk shall certify the fact to the Council at its next regular meeting. The Council shall thereupon submit the proposed ordinance to the electors at the next available municipal or state election held not less than thirty (30) days after such certification by the committee of petitioners for which the City can lawfully provide required notices to the election authorities without seeking a court order.

In April 2019, Plaintiffs, as a five-member committee of petitioners, submitted their "Green Transit" initiative petition to the City Council, seeking to place it on the ballot for the election to

---

[2] Kansas City, Missouri is a charter city. The Court may properly take judicial notice of the City's charter. *See Weed v. Jenkins*, 873 F.3d 1023, 1028 (8th Cir. 2017); *Peterson Cos. v. City of Kansas City*, No. 17-00473-CV-W-GAF, 2019 WL 10888195, at *1 n.1 (W.D. Mo. Mar. 21, 2019) (taking judicial notice of Kansas City's city charter).

be held November 5, 2019. The ordinance was submitted to the City Council at its meeting held on April 25, 2019. The sixty-day period (ending on June 25, 2019) expired without the City Council passing the ordinance either as contained in the petition or in a different form. The ten-day period in section 702 for the committee of petitioners to certify the submission of the ordinance to be placed before the voters expired on July 5, 2019. On July 18, 2019, more than ten days after the ten-day certification deadline passed, Plaintiffs submitted a certification to the City Clerk with signatures from only three of the five members of the committee. (*See* Doc. 47-3.) Plaintiffs allege Defendants "released" the petition at that time, "effectively eliminating it from ever being placed before voters by the City" and have not communicated why the City "refus[ed] to place" the petition on the ballot. (Doc. 12 at 3.)

Approximately one month later, on August 15, 2019, Mr. Chastain filed a petition for emergency injunction and misfeasance in the Circuit Court of Jackson County, Missouri. The lawsuit was filed on behalf of "Clay Chastain and fellow members of the Committee of Petitioners" and sought "an emergency injunctive order" for the City to place the initiative petition on the November 5, 2019 ballot "in its 'original form.'" (Doc. 47-5 at 1.); *Chastain v. City of Kansas City*, Case No. 1916-CV22248. The petition alleged the City had "illegally and unjustly block[ed] and delay[ed] a vote, by unduly holding the petition in committee for no stated reason and because the Clerk did not submit the Committee's demand letter to the full Council as instructed by the Charter," and in addition to injunctive relief, sought $1 million in damages. (*Id.* at 8.)

The City filed a motion to dismiss the state court complaint on August 21, 2019, which the circuit court granted on the following day.[3]

Finally, on August 26, 2019, Plaintiffs filed the instant lawsuit under 42 U.S.C. § 1983, asserting a constitutional claim under the First Amendment. Defendant argues it is entitled to summary judgment because the suit is either precluded under res judicata or collateral estoppel, or alternatively, the petition process in the City Charter does not violate Plaintiffs' First Amendment rights, and Plaintiffs' do not otherwise establish a constitutional violation.

---

[3] In the City's motion to dismiss, it sought dismissal under Missouri rules of civil procedure for lack of subject matter jurisdiction, lack of legal capacity to sue, and failure to state a claim. (Doc. 47-6 at 1.) The circuit court's judgment, entered on August 22, 2019, stated only that, "The Court, being duly advised in the premises, and after careful consideration hereby GRANTS Defendant's Motion to Dismiss." (Doc. 47-7.)

3

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a movant is entitled to summary judgment on a claim only if he has made a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying this standard, the Court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Recio v. Creighton Univ.*, 521 F.3d 934, 938 (8th Cir. 2008). The inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment).

## III. Discussion

### A. Preclusive Effect of Prior State Court Decision

Defendant first argues it is entitled to summary judgment because Plaintiffs' First Amendment claim could have been brought in the 2019 lawsuit in state court. Defendant argues that Plaintiffs are barred by res judicata from bringing this lawsuit and that "collateral estoppel estops the [committee of petitioners] from arguing it was anything but its own incomplete and untimely actions that kept the ordinance from being presented to the voters." (Doc. 47 at 5.)

Under 28 U.S.C § 1738, "a state court judgment is entitled to the same full faith and credit in a federal court as the judgment is given by state law." *Medvick v. City of Univ. City, Mo.*, 995 F.2d 857, 858 (8th Cir. 1993) (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). In Missouri, the doctrine of res judicata "operates as a bar to the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties." *Lauber-Clayton, LLC v. Novus Props. Co.*, 407 S.W.3d 612, 618 (Mo. Ct. App. 2013) (citations omitted). "Because Missouri recognizes the doctrine of res judicata, a federal court presented with a § 1983 action in Missouri must apply the doctrine to give preclusive effect to a Missouri court judgment." *Medvick*, 995

4

F.2d at 858 (citations omitted). "The law of the forum that rendered the first judgment controls the res judicata analysis." *Laase v. Cty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) (citation and quotation omitted) (looking to Minnesota law to determine whether plaintiff's suit under § 1983 was barred by the doctrine of res judicata based on an earlier state court judgment).

The doctrine of res judicata applies if four identities are satisfied: "(1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made." *Lauber-Clayton* at 618. In addition, "a final judgment on the merits must have been rendered in the underlying action." *Jordan v. Kansas City*, 929 S.W.2d 882, 885 (Mo. Ct. App. 1996).

Similarly, under the collateral estoppel doctrine, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue." *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996) (quoting *Allen*, 449 U.S. at 94). In Missouri, collateral estoppel (also known as issue preclusion) applies when:

> (1) the issue in the present action is identical to the issue decided in the prior adjudication; (2) the prior adjudication resulted in judgment on the merits; (3) the party against whom issue preclusion is asserted was a party or is in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit."

*Id.* at 1096 (citing *State ex rel. Haley v. Groose*, 873 S.W.2d 221, 223 (Mo. banc 1994)). "The party seeking collateral estoppel has the burden to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009) (citation and quotation marks omitted).

In either case, res judicata and collateral estoppel both require a "final judgment on the merits . . . involving the same claim or issue sought to be precluded in the cause in question." *Robin Farms, Inc. v. Beeler*, 991 S.W.2d 182, 185 (Mo. Ct. App. 1999) (citations omitted). The default rule in Missouri is that an "involuntary dismissal shall be without prejudice unless the court in its order for dismissal shall otherwise specify." Mo. Sup. Ct. Rule 67.03*; see also Pruitt v. Mo. Dep't of Corr.*, 224 S.W.3d 630, 631 (Mo. Ct. App. 2007) (presuming a dismissal was without prejudice when the trial court failed to specify otherwise). And a "dismissal without prejudice generally does not constitute a final judgment because it does not constitute an adjudication on the merits." *Al-Hawarey v. Al-Hawarey*, 460 S.W.3d 40, 42 (Mo. Ct. App. 2015) (citation omitted);

*see also* Mo. Sup. Ct. R. 67.01 ("A dismissal without prejudice permits the party to bring another civil action for the same cause, unless the civil action is otherwise barred.").

However, there are a few exceptions to Missouri's default rule regarding involuntary dismissals. For instance, "[w]hen the effect of the order is to dismiss the plaintiff's action and not the pleading merely, then the judgment entered is final and appealable," which includes a "dismissal without prejudice for failure of the petition to state a claim, when the party elects not to plead further." *Mahoney v Doerhoff Surgical Serv., Inc.*, 807 S.W.2d 503, 506 (Mo. banc 1991) (citation omitted); *see Dunn v. Bd. of Curators of Univ. of Mo.*, 413 S.W.3d 375, 377 (Mo. Ct. App. 2013) (dismissal for failure to state a claim in this manner is res judicata to a later cause of action based on the same claims, parties, and material facts).[4]

In this case, the exception to Missouri's default rule appears to apply, thus barring this action by res judicata. The judgment of the state court granting the City's motion to dismiss did not specify that the dismissal was with prejudice, nor did it specify the ground or grounds for dismissal. (*See* Docs. 47-7; 47 at ¶ 19.) When the trial court does not provide a reason for dismissal, Missouri appellate courts generally "presume [the dismissal] was based on the grounds stated in [movant]'s motion[.]" *Ricketts v. Ricketts*, 113 S.W.3d 255, 258 (Mo. Ct. App. 2003); *see Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 84 (Mo. Ct. App. 2012). In seeking dismissal of the state court action, the City argued the petition failed to state a claim because "the committee of petitioners failed to comply with the procedural requirements of the City Charter to cause their ordinance to be submitted to the voters" in that the certification the committee submitted to place the ordinance on the ballot was signed only by three of the five committee-of-petitioners members and it was submitted after the ten-day period for doing so had expired. (Doc. 47-6 at 9-10.) The state court records in Case No. 1916-CV22248[5] do not appear to include further amended pleadings in that case following the judgment of dismissal. Thus, to the extent the state

---

[4] In comparison, however, dismissal for lack of standing, which is a jurisdictional rather than substantive issue, "is not 'on the merits' for res judicata purposes." *Healthcare Serv. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 612 (Mo. banc 2006). Neither is "[a] dismissal for lack of subject matter jurisdiction . . . res judicata as to the merits of the cause." *Bannum, Inc. v. City of St. Louis*, 195 S.W.3d 541, 545 (Mo. Ct. App. 2006) (citation omitted); Callahan v. Cardinal Glennon Children's Hosp., 901 S.W.2d 270, 273 (Mo. Ct. App. 1995) ("A finding that a court lacks subject-matter jurisdiction is preliminary, without prejudice, and without res judicata or collateral estoppel effect.") (citation omitted).

[5] Although not part of the summary judgment record, the Court may take judicial notice of the same. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (courts "may take judicial notice of judicial opinions and public records") (citation omitted).

court dismissed the petition in the state court action for failure to state a claim, without further pleading filed in the case, it appears to be a final judgment on the merits for res judicata or preclusive purposes.

There is no real question the remaining "identifies" for res judicata to attach are satisfied here. The "thing sued for" – monetary and injunctive relief – is the same; the causes of action – seeking redress for the City's alleged failure to properly place the initiative petition on the ballot for a vote – are the same; and the quality or status of the person against whom the claim is made is the same because the City was sued in both cases. *See also Roy v. MBW Constr., Inc.*, 489 S.W.3d 299, 304 (Mo. Ct. App. 2016) (applying the four identities). Indeed, the only argument Plaintiffs make against the application of res judicata to bar the instant lawsuit is that the identity of parties is not the same. Plaintiffs argue the committee of petitioners "was never a legal party, or plaintiff, to that prior case," and therefore res judicata cannot attach to this case. (Doc. 48 at 2.) Plaintiffs' argument overlooks, however, that the "identity of the parties" element for res judicata purposes is satisfied as to any party "in privity with" a prior party. *Roy*, 489 S.W.3d at 304 (citation and quotation marks omitted). As applied, res judicata "bar[s] any claim that was previously litigated between the same parties or those in privity with them," that is as to those whose interests are "so closely intertwined that the non-party can fairly be considered to have had his or her day in court." *Roy*, 489 S.W.3d at 304 (citation and quotation marks omitted).

Even accepting Plaintiffs' argument that the only "party" in the state court action was Mr. Chastain, a dubious assertion at best,[6] this argument fails. Plaintiffs, as the committee of petitioners, are otherwise "so closely intertwined" with Mr. Chastain in the context of this case and the prior claim made in the state court petition such that even if Plaintiffs were not a "party" in the state court action, Plaintiffs "can fairly be considered to have had [their] day in court." *Id.*

Accordingly, the Court finds this action is barred by res judicata and Defendant is therefore entitled to summary judgment.

---

[6] Although only signed by Mr. Chastain, the state court petition was captioned "Clay Chastain & Fellow Members of the Committee of Petitioners, Plaintiffs," and stated it was brought by "Plaintiffs Clay Chastain and fellow members of the Committee of Petitioners (Petitioners)" and then "Respectfully submitted by Clay Chastain (leading member of the committee of petitioners), and other fellow members of the committee." (*See* Doc. 47-5.) The four named Plaintiffs in this case (William Young, Mary Ealon, Denetta Dickerson, and Latoy Matthews) were also individually listed as "Committee of petitioner (pro se)" in the signature block, although they did not individually sign the state petition. *Id.* at 9.)

7

Case 4:20-cv-00694-RK   Document 51   Filed 01/26/22   Page 7 of 10

## B. First Amendment Claims

Even if this cause of action were not barred by res judicata, the Court finds Defendant would otherwise be entitled to summary judgment on the merits of Plaintiffs' First Amendment claim. Plaintiffs bring this claim under § 1983 and allege a violation of their First Amendment right "to petition the government for redress of grievances." (Doc. 12 at 1.) As such, Plaintiffs' "constitutional claim is best construed as based upon freedom of speech." *Biddulph v. Mortham*, 89 F.3d 1491, 1497 (11th Cir. 1996).

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

This statute was designed to provide "a broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 685 (1978). However, § 1983 provides no substantive rights. *See, e.g.*, *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Rather, § 1983 provides a remedy for violations of the "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." § 1983; *see also Albright*, 510 U.S. at 271 (stating that § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'") (citation omitted). Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution [or] laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

Here, Defendant is entitled to summary judgment because Plaintiffs have failed to establish the deprivation of a federally protected right. The Eighth Circuit has recognized that "the right to a state initiative process is not a right guaranteed by the United States Constitution, but is a right created by state law." *Miller v. Thurston*, 967 F.3d 727, 737 (8th Cir. 2020) (quoting *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 191 (1999)) (alteration omitted). "Still, certain rules and requirements related to the process may nevertheless implicate the Federal Constitution, including the First Amendment." *Id.* (citations omitted). The Eighth Circuit, however,

8

distinguishes "between initiative petition laws that only make the process 'difficult' and those that affect 'the communication of ideas associated with the circulation of petitions.' The latter implicate the First Amendment." *Id.* (citing *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997). In *Miller*, the Eighth Circuit discussed this distinction, noting:

> In *Meyer*, Colorado's statutory ban on paid petition circulators implicated the First Amendment because it limited the number of voices who will convey appellees' message, the hours they can speak, and the size of the audience they can reach. Similarly, in *Buckley*, the Court subjected Colorado's requirement that petition circulators be registered voters to First Amendment scrutiny because it drastically reduced the number of persons, both volunteer and paid, available to circulate petitions. . . .
>
> . . . Distinguishing Nebraska's initiative petition law from the unconstitutional Colorado law at issue in *Meyer*, we recognized that the Nebraska law, though burdensome, in no way restricted the ability to circulate petitions or otherwise engage in political speech. True, we said, the Nebraska law may have made it difficult for appellants to plan their initiative campaign and efficiently allocate their resources, but the difficulty of the process alone is insufficient to implicate the First Amendment. There must be some affect on the communication of ideas associated with the circulation of petitions. Nebraska's law had no such effect.

*Id.* at 737–38 (citations and quotation marks omitted).

In this case, the challenged initiative petition provision of the City Charter does not present a First Amendment violation. Section 702 of the City Charter does not affect "the communication of ideas associated with the circulation of petitions." Instead, section 702 outlines procedural steps that must be followed before an initiative petition is placed on a ballot before the voters. Contrary to Plaintiffs' suggestion otherwise, section 702 does not *require* the City Council to vote on the proposed ordinance.[7] Rather, it provides a sixty-day period in which the City Council may vote on it. Further, section 702 provides procedures for the committee of petitioners to submit the proposed ordinance to electors if the City Council fails to pass the ordinance within sixty days, or if the City Council passes a different form of the ordinance.[8] Nothing in section 702 restricts "the

---

[7] On this point, Plaintiffs allege "Defendant's failure to place the petition on the ballot during the first 60-days is clear evidence of the City's bad faith actions and its violation of the COP's [(committee of petitioners)] First Amendment rights." (Doc. 48 at 4.) This unsupported allegation, however, is insufficient to withstand summary judgment and is contrary to the plain text of section 702 which explicitly contemplates the City Council failing to pass an ordinance within sixty days after submission and thereafter permits the certification for submission to the voters by the committee of petitioners.

[8] Plaintiffs argue "[n]o sincere intelligent person can believe Section 702 can be interpreted to mean a 5-member self-appointed Committee of Petitioners has the legal authority to decide whether a

communication of ideas associated with the circulation of petitions" in a way that implicates the First Amendment. Although the additional requirements may make it more difficult to submit the proposed ordinance to electors, those procedural burdens do not implicate the First Amendment.

As the undisputed facts demonstrate, Plaintiffs did not properly certify submission of the proposed ordinance to the voters within ten days after the expiration of the sixty-day period for the City Council to otherwise approve the ordinance (either as submitted or in a different form). Plaintiffs submitted the certification to the City Clerk thirteen days after the ten-day period expired, and only three of the five members signed the letter. The failure of Plaintiffs to properly meet the requirements of section 702 for placing their initiative on the ballot does not give rise to a First Amendment constitutional violation by Defendant. Simply, the undisputed facts do not demonstrate that the City's initiative petition process violates the First Amendment or that the City otherwise violated the First Amendment rights of Plaintiffs concerning their specific initiative petition. Plaintiffs have not provided specific facts or evidence demonstrating the abuse of authority or misfeasance alleged and have failed to create a genuine issue for trial. Plaintiffs have presented no facts or evidence, for instance, that indicate Defendant contributed to the untimely filing, interfered with Plaintiffs obtaining signatures from all five committee members, or otherwise unlawfully interfered with Plaintiffs' First Amendment rights. Accordingly, even if the cause of action were not barred by res judicata, the Court finds Defendant is entitled to judgment as a matter of law on the merits of Plaintiffs' First Amendment constitutional claim.

## IV. Conclusion

Defendant's motion for summary judgment (Doc. 46) is **GRANTED,** and judgment is entered in favor of Defendant.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark<br>
ROSEANN A. KETCHMARK, JUDGE<br>
UNITED STATES DISTRICT COURT

DATED: January 26, 2022

---

petition signed by 3,000 registered voters goes on the ballot or not, by any action, or inaction, it may take." (Doc. 48 at 5.) Plaintiffs' assertion ignores the plain text of section 702, as set forth above. By ignoring this plain text, Plaintiffs attempt to create a First Amendment violation where one does not exist.